UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-20827-BLOOM/Louis

JOE NATHAN PYATT JR,

    Plaintiff,

v.

MAYOR CARLOS A. GIMENEZ, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant Mayor Carlos A. Gimenez's ("Mayor Gimenez") Motion to Dismiss, ECF No. [18] ("Mayor's Motion"), and Defendants Alexander D. Casas ("Chief Casas"), Alfred Torres ("Sgt. Torres"), and Allen Lowe's ("Sgt. Lowe")[1] Motion to Dismiss, ECF No. [30] ("Officers' Motion") (collectively, "Motions"). *Pro se* Plaintiff filed a response to the Mayor's Motion, ECF No. [21] ("Mayor's Response"), and a response to the Officers' Motion, ECF No. [32] ("Officers' Response"). Mayor Gimenez filed a reply in support of his motion, ECF No. [22] ("Mayor's Reply"), and Officer Defendants filed a reply in support of their motion, ECF No. [33] ("Officers' Reply"). The Court has reviewed the Motions, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Mayor Gimenez's Motion is granted in part and denied in part, and the Officers' Motion is granted in part and denied in part.

---

[1] Although Plaintiff refers to Allen Lowe as an officer, his rank is sergeant. *See* ECF No. [33] at 2 n.1.

I.     BACKGROUND

According to the Complaint, ECF No. [1] (the "Complaint"), Plaintiff is an alumnus of Florida International University ("FIU"). *Id.* at ¶ 4. While somewhat difficult to follow, he appears to allege that in October 2016, he was charged with assault with a deadly weapon arising from a physical altercation that occurred at FIU. *Id.* at ¶ 18. Plaintiff asserts that he and a roommate called the police to report that an individual named Donnavin Bulgin was in their dorm room, *id.* at ¶ 19, and that, after waiting for the police to arrive, Plaintiff was detained "without being asked any questions" and was then suspended by FIU for one year. *Id.* at ¶¶ 20-22. Plaintiff alleges that all charges have been dropped against him. *Id.* at ¶ 26.[2]

Following his arrest and suspension, in December 2018, Plaintiff was given a trespass warning after being found sleeping in the FIU Green Library on a Sunday morning. *Id.* at ¶ 8. He was instructed to return in January to lift the trespass warning. *Id.* at ¶ 9. On January 3, 2019, he went to the FIU police department but claims that he was "arrested without probable cause" by Sgt. Lowe for resisting arrest without violence. *Id.* at ¶ 10. One week later, he returned to the police department where he met with "a group of officers" and was advised to set up a call with the Chief of Police. *Id.* at ¶ 11. According to Plaintiff, he then spoke with Chief Casas and "was advised that if [he] got accepted into the FIU graduate program that [Chief Casas] would lift the trespass." *Id.* at ¶ 12. He further adds that he was directed to "follow the same procedure as advised in the trespass warning for policy on how to enter the campus." *Id.*

In February 2019, Plaintiff obtained an escort to enter campus for purposes of meeting with an FIU business graduate advisor, but he was reportedly told by Sgt. Torres not to come back to

---

[2] The Complaint does not provide factual details regarding the nature of the altercation or Plaintiff's role in it, why charges were dropped, why Plaintiff was arrested or detained "without being asked any questions," or why he was suspended from FIU.

FIU. *Id.* at ¶¶ 13-14. In March 2019, Plaintiff returned to the police department to attend a public speaking seminar and to retrieve property kept from his previous arrest. *Id.* at ¶ 15. According to Plaintiff, he encountered Sgt. Torres who remarked, "[d]idn't I tell you not to come back?" and then "wrongly accused" Plaintiff by stating, "[a]ren't you suspended? You're not allowed to be on campus. You were involved in a stabbing." *Id.* at ¶¶ 16-17. Plaintiff alleges that he was then arrested again "without probable cause." *Id.* at ¶ 17.[3]

Based on these background allegations, Plaintiff now seeks damages in excess of $100,000.00 for alleged violations of his rights under 42 U.S.C. § 1983. *Id.* at ¶¶ 1-2. The Complaint alleges three counts against "Defendant" for false arrest (Count I), false imprisonment (Count II), and malicious prosecution (Count III). *See* ECF No. [1].[4]

### A. Mayor Gimenez's Motion

Mayor Gimenez moves for dismissal with prejudice because none of the Complaint's allegations relate to him, the Complaint is a shotgun pleading, and Mayor Gimenez is an improper party. ECF No. [18]. Plaintiff responds that Mayor Gimenez is the "proper person" to be named in his "personal capacity . . . representing the municipality" under § 1983. ECF No. [21] at 1. According to Plaintiff, the "Defendants named are agents of the state and thus are barred from being properly liable under" § 1983. *Id.* at 2. He argues that the officers are "employees of the state who in turn acted under the color of law which is governed by Florida's legislative body" and thus, the "municipality is therefore liable for the actions of these officers who were also operating

---

[3] Plaintiff alleges, in Count I only, that the grounds for his arrest on March 8, 2019 were disorderly conduct and trespass after warning. *See* ECF No. [1] at ¶ 35.

[4] Counts I and II expressly invoke 42 U.S.C. § 1983. *See* ECF No. [1] at ¶¶ 28, 38 (wherefore clause), 40, 44 (wherefore clause). Count III is less clear; however, the allegations support construing that malicious prosecution claim as a § 1983 violation. *See id.* at ¶¶ 2, 45, 52 (wherefore clause).

under an 'official policy' of Miami-Dade County." *Id.* Plaintiff submits that Mayor Gimenez is "the proper person to be named who is vicariously liable for the actions of" the co-defendant officers, "whom work as state employees for Florida International University." *Id.* He further requests leave to amend the Complaint to "bring clarity to the shotgun pleadings[.]" *Id.* at 3.

In reply, Mayor Gimenez argues that Plaintiff fails to rebut his arguments, and he fails to identify any facts that justify naming Mayor Gimenez as a party. ECF No. [22] at 1. Mayor Gimenez adds that no Section 1983 liability can attach to Miami-Dade County because it is not a party defendant and it did not employ the officers named in the Complaint. *Id.* at 2. He further maintains that the Court should deny Plaintiff's request for leave to amend because it was not properly raised. *Id.* Relatedly, he argues that any amendment is futile. *Id.* at 3.

### B.  Officers' Motion

The Officer Defendants move for dismissal with prejudice on several grounds. First, they assert that probable cause existed for all of Plaintiff's arrests, thus barring all claims as a matter of law. ECF No. [30] at 1-2.[5] Second, the Complaint is a shotgun pleading. *Id.* at 1. Third, during all material times, Plaintiff was not affiliated with FIU and he re-entered the campus despite a trespass

---

[5] The Complaint alleges that Plaintiff was issued a "trespass warning" in December 2018 after he was found sleeping in the Green Library. ECF No. [1] at ¶¶ 8-9. Officer Defendants attach to their Response the FIU Police Department December 23, 2018 "Field Interview Notice" and "Statement of Trespass" related to that incident. ECF No. [30-1]. They seek judicial notice pursuant to Rule 201(b), Fed. R. Evid. ECF No. [30] at 5. Because the document is a public record, referenced in the Complaint, and central to Plaintiff's claims, the Court will take judicial notice of the "trespass warning." *See, e.g.*, *Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009) ("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment."); *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081-82 (S.D. Fla. 2019) ("A court properly takes judicial notice of relevant public records in deciding a motion to dismiss, and consideration of such documents does not convert a motion to dismiss into one for summary judgment.").

warning being in effect. *Id.* at 2. Fourth, the false imprisonment claim fails because Plaintiff did not allege that his due process rights under the Fourteenth Amendment were violated, and the false imprisonment and false arrest claims are essentially duplicative counts. *Id.* at 2-3. Fifth, Chief Casas cannot be sued for supervisory liability in light of probable cause for Plaintiff's arrests and given the paucity of allegations implicating him in the alleged misconduct. *Id.* at 3. And sixth, they maintain that they are entitled to qualified immunity for any alleged constitutional violation. *Id.* In this respect, they argue that the "law was not clearly established providing under the circumstances that any of the Defendants' actions were unconstitutional. None . . . had fair warning that their conduct violated any of the Plaintiff's rights. Plaintiff had been repeatedly warned to not return or remain on FIU property, at a minimum, because of the trespass warning provided in 2018. Even if the Defendants mistakenly relied on knowledge from 2016 related to the Plaintiff's prior arrest, suspension, and removal from FIU property, it was reasonable for the officers to arrest him based on university safety concerns." *Id.* (internal citations omitted).

In response, Plaintiff argues that probable cause is lacking and that he was kicked out of the FIU library while homeless and in a "state of shock" due to a "sudden change in his life" for which he "had no plan." ECF No. [32] at 1-2. He maintains that he subsequently visited the campus "under the direct orders of the officer who issued the trespass warning." *Id.* at 2. *See also id.* at 8. Plaintiff contends that his arrests were the product of racist actions by the police, *id.* at 4, 6, and that qualified immunity does not apply. *Id.* at 4, 9. He asserts that he sues Chief Casas under a theory of direct liability based on the March 2019 arrest, *id.* at 5, 8, and he was falsely imprisoned and had his Fourteenth Amendment rights violated by Sgts. Lowe and Torres, *id.* at 8. He contends that amendment is not futile, and he concedes that the Complaint is a shotgun pleading and "can and should be amended to correct the shotgun pleadings for the purpose of clarity as justice so

requires this to be so." *Id.* at 7-9.

In reply, the Officer Defendants argue that Plaintiff's response improperly attempts to amend the Complaint with allegations not included in the Complaint, arguable probable cause existed for Plaintiff's arrests, Plaintiff fails to establish that qualified immunity does not bar claims against them, Chief Casas cannot be sued under a direct liability theory, and the Complaint is a shotgun pleading requiring dismissal. *See generally* ECF No. [33].

The Motions, accordingly, are ripe for consideration.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### B. *Pro se* Litigants

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). This leniency, however, does not confer on *pro se* litigants "a right to receive special advantages not bestowed on other litigants. [The *pro se* litigant] must, for example, abide by local rules governing the proper form of pleadings." *Procup v. Strickland*, 760 F.2d 1107, 1115 (11th Cir. 1985). Further, courts cannot serve as *de facto* counsel for a party and cannot rewrite a deficient pleading for the sake of sustaining an action. *Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004). The Court cannot simply "fill in the blanks" to infer a claim, *Brinson v. Colon*, 2012 WL 1028878, at *1 (S.D. Ga. Mar. 26, 2012), as "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule

8," *Sanders v. United States*, 2009 WL 1241636, at *3 (N.D. Ga. Jan. 22, 2009); *see Bivens v. Roberts*, 2009 WL 411527, at *3 (S.D. Ga. Feb. 18, 2009) ("[J]udges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ." (citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008))). In determining whether a *pro se* litigant has stated a claim, "the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations," while keeping in mind that "wildly implausible allegations in the complaint should not be taken to be true." *Miller*, 541 F.3d at 1100.

### III. DISCUSSION

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a "shotgun pleading" that violates Rule 8(a)(2). *Byrne v. Nezhat*, 261 F.3d 1075, 1129–30 (11th Cir. 2001). The Eleventh Circuit Court of Appeals has identified four categories of shotgun pleadings, stating

> [t]hough the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one

> degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

Shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006). Courts in this district and the Eleventh Circuit have warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne*, 261 F.3d at 1128–31 (11th Cir. 2001)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.10 (11th Cir. 2002) (expounding the various ways in which shotgun pleadings harm the courts and other litigants). "Generally, when 'a more carefully drafted complaint' might state a claim, the plaintiff must be given a chance to amend before dismissal." *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 955 (11th Cir. 2019) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)). "However, the district court need not provide such an opportunity where the plaintiff has repeatedly failed to cure deficiencies in his complaint through previous amendments or where amendment would be futile." *Id.* (quoting *Bryant*, 252 F.3d at 1163).

Here, all parties agree, and the Court similarly finds, that the Complaint in its current form operates as a shotgun pleading. Plaintiff, in fact, asserts that amendment is warranted to bring "clarity" to the allegations he raises. *See* ECF Nos. [21] at 3; [32] at 7-8. In this respect, the instant Complaint suffers from the second and fourth "sins" of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions

9

and of alleging conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.

To start, the Complaint brings claims against "Defendant" in each of the three counts even though there are four listed Defendants. Thus, on this basis alone, it is uncertain as to what claims are asserted against which Defendants. Second, Mayor Gimenez is not listed in any of the allegations apart from paragraph 5, and the grounds for liability against him are unexpressed. Even in paragraph 5, it is unclear if Mayor Gimenez is sued in his individual or official capacity or how he (or potentially Miami-Dade County) had any involvement in this case and what his role was. Third, the Complaint is unclear under what theory of liability Chief Casas is sued and what facts support such liability. To the extent a supervisory liability claim is raised, Plaintiff needs to properly allege such a claim. Fourth, the Complaint alleges that Plaintiff was issued a trespass warning following his December 2018 incident, but the descriptions of the January and March 2019 arrests do not explain why those arrests were unlawful beyond stating that they were done "without probable cause." Thus, at present, the alleged nature of those incidents does not sufficiently support claims for false arrest or false imprisonment. Fifth, and relatedly, Plaintiff fails to allege how Count II is materially different than Count I, and therefore not duplicative. Sixth, it is unclear if Count III, which the Court assumes is brought under § 1983, is predicated on malicious prosecution for the 2016 arrest and prosecution (which allegedly resulted in dropped charges) or for the 2019 arrests and charges brought against Plaintiff. Moreover, the Complaint does not allege, in any event, how there was a bona fide termination of the original criminal proceeding in his favor.[6]

---

[6] To the extent Count III is based exclusively on the January 2019 arrest and prosecution, that claim cannot proceed because Plaintiff received a *nolle prosequi* in exchange for making an apology to the arresting officers. *See* ECF No. [30-2] at 6, 11. *See also Ardis v. Danheisser*, No.

The Court is mindful that *pro se* Plaintiff's requests for leave to amend were improperly asserted in his responses, and the Court is within its discretion to deny amendment. *See, e.g.*, *Cita Trust Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (district court "soundly rejected the [plaintiff's] infirm request" for leave to amend because "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly") (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (holding that a plaintiff's failure to request leave to amend anywhere outside of her opposition to the motion to dismiss "preclude[d] the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint"). Nonetheless, in the interests of fairness and efficiency, the Court concludes that Plaintiff shall be given an opportunity to cure the alleged pleading errors to set forth actionable claims. Going forward, Plaintiff must be cognizant that the Court is not required to allow repeated opportunities to cure deficiencies where amendment is futile. *See, e.g.*, *Marshall v. Aryan Unlimited Staffing Sol./Faneuil Inc./MacAndrews Holding*, 599 F. App'x 896, 899 (11th Cir. 2015) (affirming denial of leave to amend *pro se* complaint that would not have cured deficiencies).

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the Motions, **ECF Nos. [18]** and **[30]**, are **GRANTED IN PART AND DENIED IN PART**. Plaintiff shall file an amended complaint consistent with this Order by **July 28, 2020**.

---

3:13CV366/MCR/EMT, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (determining that allegations were insufficient to state a § 1983 malicious prosecution claim, in part, because "filing a *nolle prosequi* . . . is insufficient to show that the termination of that proceeding constituted a bona fide termination in Plaintiff's favor"). Thus, Count III must be based on either the 2016 incident or the March 2019 arrest and related criminal action.

Case No. 1:20-cv-20827-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of July, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Joe Nathan Pyatt Jr
820 85th St
Apt 4
Miami Beach, FL 33141
Email: joe.nathan.pyattjr@gmail.com